UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

ADAM M. CLOKE,                    :          NO. 1:03-CV-00783
                                  :
        Plaintiff,                :
                                  :
     v.                           :          **OPINION AND ORDER**
                                  :
WEST CLERMONT LOCAL SCHOOL        :
DISTRICT BOARD OF EDUCATION,      :
                                  :
        Defendant.                :


        This matter is before the Court on Defendant's Motion

for  Summary  Judgment  (doc.  12),  Plaintiff's  Response  in

Opposition (doc. 19), and Defendant's Reply (doc. 20).

**I.  BACKGROUND**

        Plaintiff  alleges  in  this  case  that  Defendant  West

Clermont  Local  School  Board  of  Education  ("Board")  refused  to

hire  him  as  a  full-time  custodian  due  to  his  disability,  in

violation of the Americans with Disabilities Act of 1990 ("ADA"),

the  Rehabilitation  Act  of  1973,  and  Ohio  Revised  Code  §  4112.01,

et  seq.  (doc.  1).    Plaintiff,  who  has  been  diagnosed  with

paranoid  schizophrenia,  applied  for  employment  with  Defendant  on

or about March 4, 2002 (Id.).  Plaintiff had previously performed

the  job  of  substitute  custodian,  for  about  six  months,  and  claims

he  was  and  is  able  to  perform  the  essential  functions  of  the

position (Id.).  Plaintiff seeks an Order requiring Defendant to

hire him, and requiring an award of back pay and benefits, compensatory damages, front pay, and attorney's fees and costs (Id.).

The basic facts of this case are as follows. Plaintiff is twenty-three years old, and worked for Defendant as a substitute custodian from July of 2000, until January 5, 2001 (doc. 19). Substitute custodians are on a list, and are on call to assignments by head custodians, as needed, around the school district (Id.). Substitute custodians can become full-time custodians when such a position opens up[1], and in this case, Plaintiff triggered the application process "at least a few times" from July 2000 to January of 2001. (Deposition of Adam Cloke).

Plaintiff contends he performed well in the capacity of substitute custodian and cites to deposition testimony of Gary Davis, the head custodian at Amelia High School, who was his supervisor (Id.). Davis indicated that he liked Plaintiff and that with the exception of a less-than-talkative initial interview, and one day that Plaintiff left a lawnmower unattended, Plaintiff had no other problems with job performance.

---

[1] Substitute custodians do not have any contractual advantage over a non-sub in competing for a full-time position, but their work performance is known by the District and could serve as an advantage. Deposition of Edward Dyer.

(Deposition of Gary Davis). Davis stated he warned Plaintiff, if there were any more problems after the day Plaintiff left the lawnmower unattended, Davis would not call on Plaintiff to work with him anymore (Id.). Davis further indicated that Plaintiff was a good worker, up and until Plaintiff left the job on January 5, 2001 (Id.). Davis indicated he liked Plaintiff, tried to work with him, tried to teach him to use the tractor to mow, and when that did not work, he had Plaintiff use the push mower (Id.). When Plaintiff left the job on January 5, 2001, Davis stated he was "left holding the bag," and therefore Davis did not call on Plaintiff anymore to work as a substitute custodian (Id.).

Edward Dyer, Maintenance Supervisor over all head custodians for Defendant, knew that Plaintiff wanted full-time employment as early as September 2000, when he said Plaintiff angrily stated he would never come back to work at Amelia High School because he was not given a full-time position. Deposition of Edward Dyer. However, Plaintiff did return back to work at Amelia, until January 5, 2001, when Plaintiff had a very bad night at work, in that his performance was "horrible." Id. According to Dyer, Plaintiff was extremely upset that he had been called in to fill in for an employee that had received the full-time position that he had been turned down for. Id. Plaintiff left that night, and on the same day or the next, was arrested

3

for erratic driving and trying to elude police officers (doc. 19). Plaintiff's behavior at the time he was arrested was later attributed to his confused and paranoid mental condition, ultimately diagnosed as schizophrenia (Id.). Alfred Cloke, Plaintiff's father, testified that immediately after the arrest, he called Dyer and asked Dyer to take Plaintiff off the substitute custodian list until further notice. (Deposition of Alfred Cloke). Over time, and with medical help, Plaintiff was able to get his schizophrenia under control (doc. 19).

In March of 2002, with his doctor's approval, Plaintiff was ready to seek work again (Id.). He and his father indicated they spoke to Michael Ward, Defendant's Superintendent of Schools, about Plaintiff working for Defendant as a full-time custodian (Id.). According to Dr. Ward, there were two separate conversations, an initial discussion by phone, and a second discussion, several weeks later, face to face. (Deposition of Michael Ward). During the phone conversation, Ward stated Alfred Cloke informed him about Plaintiff's diagnosed condition and his treatment (Id.). According to Alfred Cloke, Ward told him that Plaintiff could return to work that same day as a substitute custodian, but in response Alfred Cloke refused, insisting that Plaintiff be hired as a full-time custodian (doc. 12). Ward responded that he would discuss the request with Maintenance

4

Supervisor Dyer, and get back to Alfred Cloke and Plaintiff later (Id.).

Ward inquired of Dyer, asking "What's the story with Adam Cloke?" (Deposition of Michael Ward). Ward did not tell Dyer that Plaintiff was schizophrenic (Id.). Neither did Ward recall telling Dyer that Plaintiff was looking for full-time work (Id.). Ward stated he himself thought Plaintiff was merely looking for substitute work (Id.). According to Ward, Dyer informed him about the day Plaintiff left the lawnmower unattended and that Plaintiff had difficulty following instructions (Id.). Upon further questioning a few days later, Dyer responded to Ward that he did not want to be responsible for Plaintiff's work performance (Id.). According to Alfred Cloke, In April of 2002, Ward told him that Defendant was not willing to hire Plaintiff as a full-time custodian, but that Dyer would provide him with a job reference if he applied somewhere else (doc. 19). According to Ward, Dyer further indicated that he was unwilling to put Plaintiff back on the list of substitute custodians. (Deposition of Michael Ward).

Plaintiff filed his Complaint on November 10, 2003 alleging Defendant discriminated against him on the basis of his disability (doc. 1). Defendant Board filed its Motion for Summary Judgment (doc. 12), on May 2, 2005, arguing that

5

Plaintiff cannot establish the prima facie elements of his ADA claim, nor prevail on his Rehabilitation Act Claim or state law claims (doc. 12). Defendant argues Plaintiff has failed to proffer evidence showing he was disabled or that Defendant even knew of any mental impairment (Id.). Defendant further argues that Plaintiff suffered no adverse employment decision, because he was offered the same substitute custodian job he had previously held (Id.). Defendant also argues Plaintiff has not shown there was a full-time custodial position open that he applied for at any time (Id.).

## II. SUMMARY JUDGMENT STANDARD

Although a grant of summary judgment is not a substitute for trial, it is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56; see also, e.g., Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464 (1962); LaPointe v. United Autoworkers Local 600, 8 F.3d 376, 378 (6th Cir.1993); Osborn v. Ashland County Bd. of Alcohol, Drug Addiction and Mental Health Servs., 979 F.2d 1131, 1133 (6th Cir.1992)(per curiam). In reviewing the instant motion, "this Court must determine whether the evidence presents

6

a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Patton v. Bearden, 8 F.3d 343, 346 (6th Cir. 1993), quoting in part Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)(internal quotation marks omitted).

The process of moving for and evaluating a motion for summary judgment and the respective burdens it imposes upon the movant and the non-movant are well settled.  First, "a party seeking summary judgment ... bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of  material fact[.]" Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); see also LaPointe, 8 F.3d at 378; Guarino v. Brookfield Township Trustees, 980 F.2d 399, 405 (6th Cir. 1992); Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989).  The movant may do so by merely identifying that the non-moving party lacks evidence to support an essential element of its case.  See Barnhart v. Pickrel, Schaeffer & Ebeling Co., L.P.A., 12 F.3d 1382, 1389 (6th Cir. 1993).

Faced with such a motion, the non-movant, after completion of sufficient discovery, must submit evidence in support of any material element of a claim or defense at issue in

the motion on which it would bear the burden of proof at trial, even if the moving party has not submitted evidence to negate the existence of that material fact. See Celotex, 477 U.S. 317; Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). As the "requirement [of the Rule] is that there be no genuine issue of material fact," an "alleged factual dispute between the parties" as to some ancillary matter "will not defeat an otherwise properly supported motion for summary judgment." Anderson, 477 U.S. at 247-48 (emphasis added); see generally Booker v. Brown & Williamson Tobacco Co., Inc., 879 F.2d 1304, 1310 (6th Cir. 1989). Furthermore, "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." Anderson, 477 U.S. at 252; see also Gregory v. Hunt, 24 F.3d 781, 784 (6th Cir. 1994). Accordingly, the non-movant must present "significant probative evidence" demonstrating that "there is [more than] some metaphysical doubt as to the material facts" to survive summary judgment and proceed to trial on the merits. Moore v. Philip Morris Cos., Inc., 8 F.3d 335, 339-40 (6th Cir. 1993); see also Celotex, 477 U.S. at 324; Guarino, 980 F.2d at 405.

        Although the non-movant need not cite specific page numbers of the record in support of its claims or defenses, "the

designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the non-moving party relies." Guarino, 980 F.2d at 405, quoting Inter-Royal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir.1989)(internal quotation marks omitted). In contrast, mere conclusory allegations are patently insufficient to defeat a motion for summary judgment. See McDonald v. Union Camp Corp., 898 F .2d 1155, 1162 (6th Cir. 1990). The Court must view all submitted evidence, facts, and reasonable inferences in a light most favorable to the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970); United States v. Diebold, Inc., 369 U.S. 654 (1962). Furthermore, the district court may not weigh evidence or assess the credibility of witnesses in deciding the motion. See Adams v. Metiva, 31 F.3d 375, 378 (6th Cir. 1994).

Ultimately, the movant bears the burden of demonstrating that no material facts are in dispute. See Matsushita, 475 U.S. at 587. The fact that the non-moving party fails to respond to the motion does not lessen the burden on either the moving party or the Court to demonstrate that summary judgment is appropriate. See Guarino, 980 F.2d at 410; Carver v. Bunch, 946 F.2d 451, 454-55 (6th Cir. 1991).

9

## III. ANALYSIS

### A. Applicable Law

The Americans with Disabilities Act ("ADA") was enacted to provide a "clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). The ADA provides that no covered employer shall discriminate against "a qualified individual with a disability because of the disability of such individual" in any of the "terms, conditions [or] privileges of employment." 42 U.S.C. § 12112(a). Where, as here, the Plaintiff has no direct evidence of discrimination, he must demonstrate, minimally, that (1) he is "disabled" as contemplated by the ADA; (2) he is otherwise qualified for the position, with or without reasonable accommodations for his disability; and (3) he suffered an adverse employment decision as a result of this disability. See, e.g., Mahon v. Crowell, 295 F.3d 585, 589 (6th Cir. 2003); Monette v. Electronic Data Sys. Corp., 90 F.3d at 1178. Should Plaintiff fail to establish a factual dispute as to any one of these elements of his prima facie case, summary judgment would be warranted in Defendant's favor. Monette, 90 F.3d at 1185-86 ("If the plaintiff fails to establish a predicate fact necessary to create the presumption of unlawful intent,...the 'burden' never shifts to the defendant."). Merely

10

having a physical or mental impairment does not render one disabled under the ADA. MX Group, Inc. V. City of Covington, 293 F.3d 326, 337 (6th Cir. 2002). Rather, the Act defines a disability as any of the following:

> (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
>
> (B) a record of such an impairment; or
>
> (C) being regarded as having such an impairment.

42 U.S.C. § 12102(2). "'Major' in the phrase 'major life activities' means important...and thus refers to those activities that are of central importance to daily life;" the accompanying regulations and interpreting federal courts have determined that the term includes performing manual tasks, speaking, breathing, and working. The question of whether a Plaintiff is regarded as having such an impairment, under the third prong of the statute, ordinarily is not one to be decided on summary judgment, as it involves a determination of state of mind that is more appropriate for the jury than for the judge. Ross v. Campbell Soup Co., 237 F. 3d 701, 709 (6th Cir. 2001).

Once a Plaintiff establishes a prima facie case of disability discrimination, Defendant must offer a legitimate nondiscriminatory reason for its adverse action. If the employer satisfies this burden, then Plaintiff must produce evidence

showing the proffered explanation is pretextual. <u>Hendrick v. Western Reserve Care System</u>, 355 F.3d 444, 452-453 (6th Cir. 2004). The same standards applicable to Plaintiff's ADA claim apply to his disability claim under the Rehabilitation Act and to his claim under Ohio disability law, O.R.C. § 4112.02(A). <u>Burns v. City of Columbus Dept. Of Police</u>, 91 F.3d 836, 842 (6th Cir. 1996), <u>City of Columbus Civil Serv. Commission v. McGlone</u>, 82 Ohio St.3d 569 (1998).

### B.  Defendant's Motion

Defendant argues that Plaintiff has failed to establish that he is disabled (doc. 12). Defendant contends Plaintiff has failed to show that schizophrenia resulted in some impairment, that Defendant knew of any such impairment, or that Defendant regarded him as having an impairment (<u>Id</u>.). Defendant next argues that Plaintiff has not established that he suffered an adverse employment decision, because he was offered the same position he had previously held (<u>Id</u>.). Defendant argues there is no evidence that Ed Dyer, who stated he did not want to be responsible for Plaintiff's work, had any knowledge of Plaintiff's mental condition (<u>Id</u>.). According to Defendant, there can be no discriminatory animus behind such statement when Dyer was unaware of Plaintiff's schizophrenia (<u>Id</u>.). Finally, Defendant argues Plaintiff fails to establish the last <u>prima</u>

<u>facie</u> element, that a position remained open while other applicants were sought in his stead (<u>Id</u>.). For these reasons, Defendant argues that Plaintiff has failed to establish any genuine issues of material fact, that he cannot establish the <u>prima facie</u> elements of his claims, and that Defendant is entitled to judgment as a matter of law (<u>Id</u>.).

### C. Plaintiff's Response

Plaintiff responds that deposition testimony shows that Superintendent Ward viewed him as having a learning disability, and that Dyer and Ward both regarded him as being substantially limited in his ability to speak and interact with others (doc. 19). Plaintiff argues that Davis's testimony establishes that he did an excellent job as a custodian (<u>Id</u>.). Plaintiff further argues that normally Defendant gives priority to hiring people like Plaintiff, who have worked as substitute custodians (<u>Id</u>.). Plaintiff argues that before he was diagnosed with schizophrenia, he came close to being hired for a full-time position at Amelia High School (<u>Id</u>.). From January of 2001 until March of 2002, Plaintiff states he was treated for schizophrenia, and there is no reason now why he cannot work for Defendant (<u>Id</u>.). Plaintiff argues that Defendant's claim that he was rejected for full-time employment because he had done poor work as a substitute custodian is "an utter fabrication" (<u>Id</u>.). Plaintiff argues the

only reason Defendant did not agree to hire him was that it did not want to be responsible for someone with a mental impairment working for the School District (Id.).  Plaintiff indicates Defendant hired seven full-time custodians between June 2002 and March 2003, and therefore it is clear Defendant continued to have openings and seek other applicants after it rejected Plaintiff (Id.).

Plaintiff, citing Sutton Airlines, Inc., 527 U.S. 471, 479 (1999), argues that Plaintiff must be considered "disabled" under the ADA if the Defendant regarded him as having any substantially limiting impairments, even if his impairments did not in fact substantially limit him (Id.).  Plaintiff contends he was regarded by Defendant as being substantially limited in at least three major life activities: 1) working, 2) learning, and 3) speaking and interacting with others (Id.).  Plaintiff argues a reasonable jury could conclude that he was regarded as disabled, that he was qualified for the position, that he suffered an adverse employment action, that Defendant knew or had reason to know of his disability, and that the position remained open while the employer sought other applicants (Id.).  Plaintiff argues that Defendant cites to no case law in support of its argument that Plaintiff "was not entitled to a better job than the one he already held," and argues the ADA applies to

14

discrimination in advancement (Id.). In any event, argues Plaintiff, Ward's deposition testimony shows Defendant was not willing to put Plaintiff back on the substitute list after Ward consulted with Dyer (Id.).

Finally, Defendant's proffered justification for not hiring Plaintiff, that Plaintiff allegedly performed poorly, is pretextual, argues Plaintiff, in the light of the testimony of Davis (Id.). At the very least, argues Plaintiff, a reasonable jury could conclude the proffered explanation is a pretext (Id.).

### D. Defendant's Reply

Defendant replies that Plaintiff mischaracterizes or misstates several points (doc. 20). Defendant argues Ward never regarded Plaintiff as having a learning disability, and neither Ward nor Dyer ever regarded Plaintiff as being substantially limited in his ability to speak or interact with others (Id.). Defendant argues that Davis's testimony shows that Plaintiff was a good worker, "in the beginnning," a detail omitted by Plaintiff (Id.). Defendant argues that Ward never contacted Dyer about Plaintiff possibly returning after January 6, 2001, and that it is uncontested that Ward never told Dyer about Plaintiff's diagnosis (Id.).

Defendant argues that Plaintiff does not make the argument that he is actually disabled, but that he was regarded

as disabled (Id.). Defendant argues the question the court must consider is not whether the defendant believed Plaintiff was unable to perform functions on the job, but rather the defendant's belief about the "effect of the impairment on the individual's daily life" (Id. citing Toyota Mfg., Kentucky. v Williams, 534 U.S. at 200-01 (2002)). Defendant argues there is no evidence that Defendant regarded Plaintiff as being substantially limited in the major life activity of working (Id.). Defendant argues Dyer's statement that he did not want to be responsible for Plaintiff does not mean he viewed Plaintiff as being severely limited in his ability to work (Id.). Defendant argues Dyer would not have offered a reference for Plaintiff to work elsewhere if he regarded Plaintiff as someone who was substantially limited in the major life activity of working (Id.).

As for the major activity of learning, Defendant argues the evidence that Dr. Ward noticed Plaintiff would not make eye contact or speak to Ward in the hallways at school, when Plaintiff was in high school, is insufficient to demonstrate that Plaintiff was regarded by Defendant as being substantially limited in the major activity of learning (Id.). Finally, Defendant argues it did not regard Plaintiff as being disabled in the major life activity of speaking or interacting with others

16

(<u>Id</u>.).  Defendant argues the fact that Plaintiff was able to sit through a deposition shows the falsity of such claim (<u>Id</u>.). Defendant argues the testimony of Ward, Davis, and Dyer does not rise to the level of demonstrating that Defendant regarded Plaintiff as substantially limited in the areas of speaking or interacting with others (<u>Id</u>.).

　　　　　Defendant next argues that Plaintiff did not suffer an adverse employment action, because, according to Defendant, the evidence is clear that Plaintiff never actually applied for an open full-time custodial position with Defendant (<u>Id</u>.). Defendant argues that at no time after Plaintiff was diagnosed with schizophrenia did he actually apply for such a position (<u>Id</u>.).  Defendant argues the hiring process involves submission of an application to the personnel office, which is followed by the forwarding of the application to the school where the opening is available, a screening by the principal and head custodian with a preference for current employees, an interview by the principal and head custodian, and a recommendation to Mr. Dyer by the principal and head custodian (<u>Id</u>.).  After this process, Dyer performs a second interview of the candidate, forwards his recommendation as well as that of the principal and the head custodian to the personnel office, where it goes through the superintendent, and is ultimately presented to the Board for

17

approval or rejection (Id.). Defendant argues Plaintiff never triggered the process, so he suffered no adverse employment action (Id.).

Finally, Defendant reiterates that in its view there is no evidence Dyer knew of Plaintiff's mental disability, and argues that as Plaintiff cannot contest leaving the lawnmower unattended and walking off the job, Plaintiff cannot challenge such justifications for his non-hiring as pretextual (Id.). Based on all of the above reasons, Defendant argues summary judgment is warranted in its favor (Id.).

### E. Discussion

At issue in this case is whether a reasonable jury could find Plaintiff suffers from a disability within the meaning of the ADA, whether Plaintiff is competent to perform the essential functions of the job, and whether Plaintiff suffered an adverse employment decision because of his disability. Mahon v. Crowell, 295 F.3d 585, 589 (6th Cir. 2003). Although in the Court's view this is a close case, the Court finds that, taking all inferences in favor of Plaintiff, a reasonable jury could find that he was the victim of disability discrimination.

Clearly, Plaintiff's paranoid schizophrenia constitutes a mental impairment. 28 C.F.R. § 35.104. The Court finds that Plaintiff has raised a genuine issue of material fact as to

18

whether Defendant regarded him as being substantially limited in his ability to work, to speak, or to learn. A reasonable jury could infer that Plaintiff's schizophrenia started at some time prior to January 5, 2001, at which point it deteriorated to the extent where Plaintiff left work and drove erratically. Evidence can be viewed to show that Defendants had an inkling that something was not quite right mentally with Plaintiff before January 5, 2001. After Plaintiff walked off the job and left a lawnmower out, he exhibited non-responsive behavior in the face of response to chastisement for having done so. It would indeed seem unusual that an employee who had performed reasonably well suddenly could offer no justification, excuse, or apology in response to his employer. Plaintiff further apparently struggled to learn to drive the tractor mower, and therefore was relegated to using the push mower. These sorts of facts could be viewed to have tipped the Defendants off that Plaintiff was facing mental challenges. Indeed, in view of these events, Davis stated that he "tried to work with him," while Ward expressed that "there were difficulties with communications about work," and that Plaintiff had difficulty following directions.

Moreover, the "last straw" was the day, January 5, 2001, when Plaintiff walked off the job without coming back. It is arguably unreasonable to see no link with that behavior and

19

his subsequent arrest hours later, which was determined to be directly linked to schizophrenia. Although Dyer did not know of the official diagnosis, a jury could infer from what he did know, and what he said, that he viewed Plaintiff as substantially limited in his ability to work, speak, and learn.[2] A jury could conclude that for this reason, Dyer stated he did not want to be responsible for Plaintiff. In contrast to Dyer, Ward knew of Plaintiff's formal diagnosis, and yet made no steps to explore whether Plaintiff's earlier problems were linked to his condition.[3] The Court therefore concludes that a reasonable jury could find Plaintiff mentally disabled by virtue of the fact that Defendant regarded him as being disabled. Therefore summary

---

[2] The Court squarely rejects Defendant's argument that the fact that Plaintiff was able to complete a deposition indicates he has no substantial limitation in speaking or expressing himself. The deposition was taken after Plaintiff obtained and faithfully took medication for schizophrenia, a serious mental impairment.

[3] Although Bultemeyer v. Fort Wayne Community Schools, 100 F.3d 1281 (7th Cir. 1996) involved a failure to accommodate a mentally ill custodian as opposed to a refusal to hire him, the Court finds the Seventh Circuit's remarks instructive, "In a case involving an employee with mental illness, the communication process becomes more difficult. It is crucial that the employer be aware of the difficulties, and "help the other party determine what specific accommodations are necessary." Id. at 1135. In this case it is not even evident that any accommodation would be necessary, now that Plaintiff is successfully managing his condition. Yet Defendants took no steps to even consider whether accommodation would be possible or necessary.

judgment is inappropriate on the question of whether Plaintiff can qualify as disabled under the ADA.  <u>Sutton Airlines, Inc.</u>, 527 U.S. 471, 479 (1999).

The Court further finds that a jury could find Plaintiff disabled for having an impairment, schizophrenia, that substantially limited his ability to work.  Should a jury conclude that Plaintiff's schizophrenia started to some degree prior to January 5, 2001, it could reasonably follow that Plaintiff's untreated condition prevented him from reliably performing his work duties, thus substantially limiting his ability to work.

The next step of the analysis is a consideration of whether Plaintiff is qualified for the position he seeks.  The Court finds that a jury could view the facts that Plaintiff worked for six months as a substitute custodian, and that Davis testified he did a good job to show Plaintiff is adequately qualified.  Moreover, a jury could conclude that now that Plaintiff has received treatment for his condition, he is managing his condition well and could perform even better.

The parties strongly dispute whether Plaintiff suffered an adverse employment decision because of his disability.  Courts have defined adverse employment actions broadly to include the refusal to hire and the refusal to promote.  <u>Lovejoy-Wilson v.</u>

Noco Motor Fuel, Inc., 263 F.3d 208, 223 (2d Cir. 2001). The ADA itself clearly prohibits discrimination "in regard to job application procedures, the hiring, [and] advancement" of employees, among a list of other prohibited actions. 42 U.S.C. § 12112 (2005). The question for the Court at this stage, then, is whether a jury could find Defendant refused to hire or promote Plaintiff to a full-time custodian position.

Defendant takes the position that Plaintiff never properly applied to become a full-time custodian such that he was not refused the position. Although Defendant explains in great detail the formal hiring process that it argues Plaintiff failed to even trigger, a reasonable jury could take Plaintiff at his word that he applied at least twice for a full-time job during his tenure as part-time custodian. In such a case Dyer would have clearly known who Plaintiff was and that he desired such a position. Indeed, Dyer's deposition shows he knew Plaintiff was angry for being turned down for a full-time position as early as September 2000. The critical point in this case, however, is after Plaintiff commenced discussions with Ward in March 2002. From Plaintiff's view, he was consulting with an authority higher up in the chain-of-command, who was able to check with Dyer on the status of his request for full-time employment. In Plaintiff's view, Ward could veto any application, so while he

22

may not have started out the process by applying yet again at the personnel office, it would have been useless to do so when both Dyer and Ward indicated they would not hire him. From Defendant's view, Plaintiff needed to submit an application with the personnel office and Ward never even told Dyer Plaintiff was looking for full-time employment when he consulted with him.

According to Alfred Cloke's testimony, Ward offered to put Plaintiff back on the substitute list the day of their face-to-face meeting, and the Clokes refused, stating Plaintiff needed full-time work so as to qualify for medical insurance to cover the cost of his mental health treatment.[4] If a jury would believe Cloke's testimony, then it could infer that Ward's role was much more than a mere formality in the hiring process, but that he could exert his influence to cause Plaintiff to be hired for at least a substitute position. A jury could infer that the fact that Ward even entertained discussions about Plaintiff's employment meant he had such power. A jury might wonder why Ward did not simply refer the Clokes to the personnel office if he could not assist them with the employment question they put before him. Instead, Ward, who had knowledge of Plaintiff's

---

[4] Ward's deposition testimony was unclear from his perspective whether he made such an offer. However, it is clear that when he spoke to Dyer, Dyer told Ward that Dyer would not put Plaintiff back on the substitute list. Deposition of Ward.

23

condition, could be viewed to have acted to veto the application. As Plaintiff argues, what good would it do to apply with the personnel office if Ward and Dyer would have nixed his application in any event?

Of course a jury could find otherwise, but at this stage in the litigation, the Court must make all reasonable inferences in favor of the nonmoving party. Accordingly, the Court finds enough facts here to support the finding that Plaintiff was subject to an adverse employment decision: that his application was not even considered beside those of other applicants, so he did not have an opportunity to get hired on as a full-time custodian.

The Court's conclusion is bolstered by Plaintiff's proffer of evidence that Defendant hired some seven full-time custodians in the year subsequent to its rejection of Plaintiff. The Court's review of Dyer's deposition shows that at least two of these full-time custodians were external candidates that were hired at Amelia High School, the very high school where Plaintiff had been seeking employment. The Court does not find well-taken, therefore, Defendant's argument that there were no positions available when Plaintiff applied. A jury inferring discrimination on the part of Defendant could find that had Plaintiff's application not been improperly rejected outright,

Plaintiff could have been among the pool of candidates considered for those positions. The fact that external candidates were chosen over Plaintiff, whose performance could be viewed as fine until his mental challenges surfaced, could reinforce a finding of discrimination.

Having concluded that Plaintiff has established his prima facie case of disability discrimination, the burden shifts to Defendant to proffer a legitimate nondiscriminatory reason for its adverse decision. Hendrick v. Western Reserve Care System, 355 F.3d 444, 452-453 (6th Cir. 2004). In this case, Defendant indicates it refused to hire Plaintiff because of his performance. Defendant argues that because Plaintiff admits that he walked off the job and left equipment unattended, he cannot argue that these reasons are pretextual. A reasonable fact-finder could conclude that Plaintiff did indeed walk off the job and leave equipment unattended, but that he did so because of a mental condition that Defendant knew about and did not want to accommodate. The question of pretext, therefore, is not about whether Plaintiff walked off the job, but rather, whether Defendants did not want to be responsible for a mentally ill employee, whose behavior was arguably affected by his condition. Moreover, a jury could find that after Defendant was informed of Plaintiff's schizophrenia, and that Plaintiff was successfully managing it with medication, Defendant still refused to even

offer Plaintiff his old position back again. Under these circumstances, a fact-finder could make a finding of pretext.

**CONCLUSION**

Having reviewed this matter, and taking all inferences in favor of Plaintiff as required, the Court finds it inappropriate to grant Defendant's motion for summary judgment. Plaintiff has demonstrated that a reasonable jury could find that he was disabled within the meaning of the ADA, that he is qualified for the position of full-time custodian, and that he suffered an adverse employment decision when Defendant refused to hire him. <u>Mahon v. Crowell</u>, 295 F.3d 585, 589 (6th Cir. 2003). Plaintiff has raised a genuine issue of material fact as to whether he was regarded as disabled, and the resolution of such question is appropriate for a jury. <u>Ross v. Campbell Soup Co.</u>, 237 F. 3d 701, 709 (6th Cir. 2001). Moreover, the Court finds that Plaintiff's mental impairment could be viewed to have substantially limited his ability to work, as it may have clouded his judgment and caused him to leave a lawnmower unattended, and ultimately caused him to leave the job and not come back. The Court also finds that regardless of such impairment, a jury could conclude that Plaintiff demonstrated that he was basically qualified for the position of full-time custodian, as evidenced by the positive remarks of his immediate supervisor Gary Davis. The final prong of Plaintiff's <u>prima facie</u> case is met because a

a reasonable jury could conclude that Plaintiff suffered an adverse employment decision when Defendant indicated it would neither hire Plaintiff for the full-time position he sought nor for a substitute position. Defendant's proffered legitimate justification for Plaintiff's dismissal, Plaintiff's poor performance, can be viewed as pretextual because a jury could conclude Plaintiff lost his job due to disability and then was not taken back for the same reason.

Accordingly, the Court DENIES Defendant's Motion for Summary Judgment (doc. 12). The Court further SCHEDULES a final pretrial conference for 2:00 P.M. on March 9, 2006, and the three-day jury trial, on an on deck basis, to commence April 18, 2006.

SO ORDERED.

Dated: January 10, 2006        /s/ S. Arthur Spiegel
                               S. Arthur Spiegel
                               United States Senior District Judge